MORSE–STARRETT PRODUCTS CO.
v. STECCONE.

STECCONE v. MORSE–STARRETT
PRODUCTS CO.

No. 13271.

United States Court of Appeals
Ninth Circuit.
June 15, 1953.

Mellin, Hanscom & Hursh, Oscar A. Mellin, Leroy Hanscom and Jack E. Hursh, San Francisco, Cal., for Morse-Starrett Products Co.

Naylor & Lassagne and Jas. M. Naylor, San Francisco, Cal., for Steccone.

Before BONE, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

This case is a continuation of trade-mark and unfair competition litigation between Morse-Starrett Products Co., hereafter Morse-Starrett, and Ettore G. Steccone, hereafter Mr. Steccone, which has extended over a period of three and a half years.

The original suit, commenced by Morse-Starrett, culminated in a judgment being entered on January 11, 1950, wherein the

District Court determined that, as between the parties, Morse-Starrett was entitled to the use of the mark "Steccone" as applied to squeegees and the handles thereof. Both parties manufacture a particular type of squeegee which is used for window cleaning. Although it was not determined whether the name "Steccone", as affixed to these products, was subject to protection as a trade-mark, the Court held that Morse-Starrett's use of the name was entitled to protection against unfair competition. The factual background of the controversy and the basis for the trial court's holding are set forth in detail in the District Court's opinion, Morse-Starrett Products Co. v. Steccone, N.D.Cal.1949, 86 F.Supp. 796. We deem it unnecessary to repeat them here. The decree of the District Court, *inter alia*, enjoined Mr. Steccone "from in any manner using the trade-name 'Steccone' enclosed by an oval in connection with squeegees, or the handles thereof, and from so using the name 'Steccone' that reasonably attentive purchasers cannot readily distinguish between the products of plaintiff and defendant, provided, however, that defendant may make, advertise and sell squeegees as the products of the Steccone Products Co., or as defendant's product, so long as the name 'Steccone', used alone or in conjunction with other words or symbols, on the squeegees or in the written advertising thereof, is accompanied by sufficient explanatory material so as to clearly differentiate it from the product manufactured and sold by plaintiff." No appeal was taken from that judgment.

Subsequent to the judgment, Mr. Steccone continued in the business of manufacturing and selling squeegees. He continued, as before the judgment, to stamp on his squeegee handles "Steccone Products Co. Oakland, Calif. Master", without anything further to differentiate his product from that of Morse-Starrett, which also used the name "Steccone" upon its product.

Moreover, he merely added his given name "Ettore" to the name "Steccone" which appeared on the squeegee rubbers. Mr. Steccone's advertising material also failed properly to distinguish the source of the product. This conduct resulted in Morse-Starrett petitioning for an order to show cause why Mr. Steccone should not be held in contempt. Such order issued and, after a hearing before the same District Court judge who had rendered the original judgment, Mr. Steccone was held in contempt on July 31, 1950. The District Court found that Mr. Steccone's advertising violated the earlier judgment and that he had not complied with the order requiring him to indicate on the squeegees and their handles that they were not the product of Morse-Starrett. It was ordered that Mr. Steccone cease and desist from the improper advertising and "forthwith cease and desist from manufacturing and selling any squeegees or handles thereof marked with the word 'Steccone' used alone, or in conjunction with other words and symbols which do not clearly indicate that they are not the product of the Morse-Starrett Products Co." As in the case of the original suit for unfair competition, no appeal was taken from the judgment.[1]

The present proceedings were instituted by Morse-Starrett. It alleges that Mr. Steccone is continuing to violate both the original injunction and the later contempt judgment. A second petition for an order to show cause for contempt was filed and the District Court judge who had presided during the two earlier proceedings issued a second order to show cause. Before a hearing could take place, the judge passed away. Later, after a hearing before another District Court judge, an order was entered discharging the second order to show cause for contempt. The District Court's order at the same time denied a motion which Mr. Steccone had made under the provisions of rule 60(b), Rules of Civil Procedure,[2] for relief from the original

---

1. This court rejected Mr. Steccone's contention that the memorandum opinion of July 31, 1950, was not a final judgment. 9 Cir., 1951, 191 F.2d 197.

2. Rules of Civil Procedure, 28 U.S.C.A.:

"Rule 60. Relief from Judgment or Order

\* \* \* \* \*

"(b) Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence;.

judgment of January 11, 1950, as construed by the Court's memorandum opinion of July 31, 1950. This motion requested permission to use the name "Ettore Steccone" on squeegees and parts thereof when type of uniform style and equal size is used, and also requested permission to use the names "Ettore Steccone" and "Steccone Products Co." without the necessity of accompanying explanatory phrases. Both Morse-Starrett and Mr. Steccone appeal from the adverse rulings.

During the hearing before the trial court, Morse-Starrett introduced the following evidence that Mr. Steccone was continuing to violate both the original decree and the subsequent contempt judgment: (1) affidavits of two of Morse-Starrett's officials averring that while on a tour of the B. F. Goodrich Company plant at Akron, Ohio they saw squeegee rubbers being manufactured for Mr. Steccone which bore only the legend "Ettore Steccone"; (2) affidavits of two investigators hired by Morse-Starrett averring that they had gone to Mr. Steccone's place of business and there purchased squeegee rubbers which bore only the legend "Ettore Steccone" and squeegee handles upon which was stamped only the legend "Steccone Products Co. Oakland, Calif. Master"; and (3) testimony of two witnesses that they had requested from a retail dealer "Steccone" squeegees and were sold squeegee handles and rubbers manufactured by Mr. Steccone and bearing only the legend "Ettore Steccone" on the rubbers and "Steccone Products Co., Oakland, Calif. Master" on the handles.

A reading of the record of the earlier proceedings discloses that the legend stamped upon the squeegee handles by Mr. Steccone has not been changed since the entry of the original judgment. The legend upon the rubbers has been changed only in that Mr. Steccone's full name "Ettore Steccone" rather than merely the legend "Steccone" is now included. Thus, to this extent, the situation is identical to that existing at the time of the first contempt proceeding, the change pertaining to the legend upon the rubbers having taken place prior to that time.[3] Conduct of a similar nature was found by the District Court in the first contempt proceeding to constitute contempt of the original judgment.[4] One who

---

Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) *any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, * * *.*" (Italics ours.)

3. The following colloquy took place between the trial Judge and Mr. Steccone's counsel during the first contempt proceeding:
"The Court: * * * Mr. Steccone has just admitted he hasn't changed any

of it [the language] either on the squeegee or the handles, never put any explanatory remarks on there at all.
"I will look it over, but I feel he hasn't in faith attempted to comply with the order.
"Mr. Naylor. If the Court please, may I correct one impression I think your Honor has, and that is that there has been no change in the markings.
"The Court. He said there hadn't been.
"Mr. Naylor. There has been as to squeegee rubbers themselves.
"The Court. But he put Ettore Steccone.
"Mr. Naylor. He put his full name on the squeegees.
"The Court. Yes, I have that in mind, but I don't think that is a complete change. I will take it under submission."

4. The District Court's memorandum opinion stated in part:
"I further find that defendant has not complied with the order of this Court requiring him to indicate on the squeegees and the handles thereof manufactured and sold by him that they are not the product of Morse-Starrett Products Co."

approaches the area of conduct prohibited by a court decree acts at his own peril.

Mr. Steccone introduced evidence indicating that subsequent to the first contempt order he had printed paper labels containing the following legend:

"Neither Ettore Steccone nor his company, Steccone Products Co., has any connection with Morse-Starrett Products Co."

These labels were said to have been wrapped around the squeegee handles and also affixed to the ends of the boxes in which Mr. Steccone shipped the squeegee rubbers to his retail dealers. He states that the fact that Morse-Starrett's witnesses testified that a dealer sold squeegees without the labels affixed is of no weight because the dealer might well have acquired these squeegees prior to the first contempt order, and Mr. Steccone was under no duty to go into the channels of the trade and retrieve articles already on the storekeeper's shelves.

■ The undisputed evidence shows that Mr. Steccone has not consistently used the paper labels, and therefore was guilty of contempt in the same manner as found in the first contempt proceeding. Moreover, even a consistent use of the paper labels would not be sufficient compliance with the spirit of the original judgment and the subsequent contempt order. First, as to the squeegee rubbers, it is apparent that since the labels are affixed only to the boxes in which the rubbers are shipped to retail dealers the ultimate consumer never receives the information contained upon the labels. The usual consumer, a window washer, would not ordinarily buy an entire box of rubbers, and for display purposes a dealer would reasonably be expected to take the rubbers out of the boxes in which they are shipped. Second, as to the squeegee handles, the paper labels are unsatisfactory in that the dealers are presented with a simple means of palming off the product as that of Morse-Starrett merely by soaking or tearing off the paper label. Since the squeegees must be immersed in liquid prior to use, such first use would typically result in the loss of the paper label. It is our view that in the circumstances of this case a more permanent marking is necessary to comply with the spirit of the original judgment. Only by clearly disclosing to the trade that his product is not the product of Morse-Starrett may Mr. Steccone continue to manufacture squeegees.

■ The assertion is made that Mr. Steccone has been attempting in good faith to comply with the terms of the original judgment. But the belief, motive, or intent of a defendant is not a defense where an injunction has been violated. McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599; Lustgarten v. Felt & Tarrant Mfg. Co., 3 Cir., 1937, 92 F.2d 277. This factor, however, may be considered in mitigation of the offense on the question of damages and other relief upon remand of the case to the District Court.

■ The District Court properly denied Mr. Steccone's motion under rule 60(b), Federal Rules of Civil Procedure, to modify the original judgment of January 11, 1950, as construed by the District Court's memorandum opinion of July 31, 1950.

The principle governing the modification of an injunction is clearly stated by the Supreme Court in United States v. Swift & Co., 1932, 286 U.S. 106, at page 119, 52 S.Ct. 460, at page 464, 76 L.Ed. 999: "There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not at liberty to reverse under the guise of readjusting." In the instant case there has been no adequate showing either that changed conditions make continuation of the injunction inequitable or that operation of the injunction cannot have the intended effect. See Restatement, Torts § 943, comment (e) (1939). The case upon which Mr. Steccone relies for the proposition that such a showing is unnecessary, Coca-Cola

Co. v. Standard Bottling Co., 10 Cir., 1943, 138 F.2d 788, does recognize that modification of a decree depends upon a showing of changed circumstances of sufficient importance to warrant such modification.

Mr. Steccone has suggested that rule 60(b)(6) was intended to broaden the power of the federal courts to give relief from judgments; that therefore the principle of the Swift & Co. case is no longer applicable.[5] The provisions of rule 60(b)(6) were not intended to benefit the unsuccessful litigant who long after the time during which an appeal from a final judgment could have been perfected first seeks to express his dissatisfaction. The procedure provided by rule 60(b) is not a substitute for an appeal.[6]

It is argued that the language of the memorandum opinion of July 31, 1950, is not consistent with the earlier judgment of January 11, 1950, and that consequently Mr. Steccone is unable to ascertain the scope of the prohibited conduct. We have examined the language in question, the pertinent parts of which have already been quoted, and find no such inconsistency. At most it may be said that the earlier judgment affirmatively stated the scope of activity which might properly be engaged in by Mr. Steccone, while the opinion rendered in the contempt proceeding expressed the same limitations negatively. In substance the limitations set forth are identical.

Finally, we note that rule 60(b) requires that a motion for relief from judgment be made "within a reasonable time". The present motion was filed on November 16, 1951, twenty-two months after the entry of the original judgment. No sufficient explanation has been given as to why Mr. Steccone delayed so long in seeking the relief he now requests. Hence, under the circumstances, it cannot be said that the motion was made "within a reasonable time". Cf. Gilmore v. Hinman, 1951, 89 U.S.App.D.C. 165, 191 F.2d 652; Cromelin v. Markwalter, 5 Cir., 1950, 181 F.2d 948.

The portion of the order denying the motion to modify the judgment of January 11, 1950, is affirmed.

The portion of the order discharging the prior order to show cause for contempt is reversed and the cause remanded for proceedings in accordance with this opinion.

5. The Advisory Committee states:
"It should be noted that rule 60(b) does not assume to define substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief." Notes of Advisory Committee on Amendment to Rules, following Fed.R.Civ.P. 60, 28 U.S. C.A.

6. See, in this regard, Ackermann v. United States, 1950, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207, distinguishing Klapprott v. United States, 1949, 335 U.S. 601, 69 S. Ct. 384, 93 L.Ed. 266, a case relied upon by Mr. Steccone as establishing a liberal interpretation of Rule 60(b) (6). The Supreme Court refers to the Klapprott case as a case involving "extraordinary circumstances" which in effect there prevented the petitioner from having his day in court during the original proceedings, and significantly states in contrasting the fact situation presented in the Ackermann case: "By no stretch of imagination can the voluntary, deliberate, free, untrammeled choice of petitioner not to appeal compare with the Klapprott situation." 340 U.S. at page 200, 71 S.Ct. at page 212.