382 S.E.2d 334

**Larry JENKINS, Karen Jenkins, et al.**

v.

**Darwin JOHNSON, etc., et al.**

**No. 18797.**

Supreme Court of Appeals of
West Virginia.

June 16, 1989.

---

282

Robert M. Bastress, Charles DiSalvo, Morgantown, for Jenkins.

Mike Magro, Jr., Morgantown, for Johnson.

PER CURIAM:

This case turns on a question of an interpretation of Rule 60(b)(5) of the West Virginia Rules of Civil Procedure. In particular, it concerns whether the trial court was correct in modifying its August 28, 1980 order relating to the width of a right-of-way which runs across the plaintiffs' property.

In 1979, the plaintiffs instituted a suit for trespass and declaratory relief against Alla–Ohio Coals (Alla). Alla owned a right-of-way for the use of a dirt road that passed over the plaintiffs' property and led to a site owned by Alla called "Round Bottom." The plaintiffs maintained that the machinery transported over the road by Alla exceeded the width of the right-of-way, encroached into their yards, and damaged them.

In a trial lasting nearly a week, the plaintiffs put on evidence regarding the location, width, and historic uses of the right-of-way. The jury awarded the plaintiffs money damages for trespass and, by an order dated August 28, 1980, the court fixed the location of the road to be "its then existing width." Alla subsequently caused a survey to be made to locate the actual course and width of the right-of-way. Neither side appealed.

In 1987, Alla's new owner and the current defendant, Darwin F. Johnson, moved to modify the trial court's August 28, 1980 ruling. In a ruling dated January 28, 1988, the trial court granted the defendant's motion by ordering that the easement be widened beyond its August, 1980 width to a width of fourteen feet with a turning radius at curves of twenty feet.[1]

There appears to be little dispute that Rule 60(b)(5) is designed to permit a prior judgment to be modified if "it is no longer equitable that the judgment should have prospective application." [2] This ground is the same as contained in Rule 60(b)(5) of the Federal Rules of Civil Procedure. It is designed, as the federal commentators point out, to permit, particularly in permanent injunction cases, a continuation of the equitable practice of allowing the court to modify its decree because of some substantial change in condition. This was explained in 7 J. Moore, *Moore's Federal Practice* ¶ 60.26[4] at 258 (1987):

"Rule 60(b) is not a substitute for appeal, none of its provisions is inconsistent with the principle of *Swift & Co.*, [286 U.S. 106, 119, 76 L.Ed. 999, 1008, 52 S.Ct. 460, 464 (1932) ], just quoted; and that principle remains controlling. The third ground of clause (5), then, does not allow relitigation of matter adjudged by the original judgment; it authorizes relief from the *prospective* features of the judgment when it is *no longer* equitable that the judgment have such prospective application." (Emphasis in original; footnotes omitted).[3]

*See also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2863 at 206–07 (1973).

 As both parties acknowledge, prior to the adoption of Rule 60(b)(5), we had settled this point in *Edlis, Inc. v. Miller*, 132 W.Va. 147, 51 S.E.2d 132 (1948), where, after a thorough review of the law, this conclusion was reached in Syllabus Point 3:

"In the exercise of its inherent power a court of equity may, after the adjournment of the term at which by final decree a permanent preventive injunction was awarded, modify or vacate the injunction, after due notice, by subsequent proceedings in the same suit, whether the injunction was awarded after litigation or by consent of the parties, when it clearly appears that, because of a change in the controlling facts or the relations of the parties or the law upon which the injunction rests, its continuance is unjust or inequitable."

1. The January 28, 1988 order also provided for additional space for ditching:
"That a reasonable ditch line may be established on either side of the aforesaid roadway, as necessary, so as to divert water off the roadway, and that adequate cross culverts may be installed where necessary in order that said roadway may be maintained properly for the benefit of all users."

2. The pertinent text of Rule 60(b)(5), W.Va. R.Civ.P., is:
"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]"

3. The quotation from Justice Cardozo's opinion in *United States v. Swift & Co.*, 286 U.S. at 119, 52 S.Ct. at 464, 76 L.Ed. at 1008, referred to in *Moore's*, is:
"There is need to keep in mind steadily the limits of inquiry proper to the case before us. We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. We are not a [*sic*] liberty to reverse under the guise of readjusting."

This rule is now embodied in Rule 60(b)(5) of the West Virginia Rules of Civil Procedure. *Edlis* involved a certified question limited to whether an equity court had the power to modify a permanent injunction. It did not deal with the timeliness of the motion to modify, which under Rule 60(b) must be within a reasonable time. As we explained in Syllabus Point 3 of *Savas v. Savas*, 181 W.Va. 316, 382 S.E.2d 510 (1989):

> "Under Rule 60(b) of the West Virginia Rules of Civil Procedure, motions based on grounds numbered (4) and (5) are required only to be filed within a reasonable time and are not constrained by the eight-month period."

■ The timeliness issue was raised below by the plaintiffs, but apparently was not decided by the trial court. This initial procedural issue would seem controlling. Testimony indicated that Mr. Johnson, who purchased the property from Alla, was aware of the right-of-way problem and the 1980 decree when he purchased the property in 1985. He did nothing for two years, which would appear under the case law to be an unreasonable period. *Morse–Starrett Products Co. v. Steccone*, 205 F.2d 244 (9th Cir.1953); *United States v. Richlyn Laboratories, Inc.*, 365 F.Supp. 805 (D.C.Pa.1973); *Sunbeam Corp. v. Charles Appliances, Inc.*, 119 F.Supp. 492 (S.D.N.Y.1953); *Schremp v. Marvel*, 405 A.2d 119 (Del.1979). We believe the court erred in not dismissing the case on this ground.

Even if we consider this case on its merits, we do not believe that the defendant could prevail. As our *Edlis* case points out, in order to change an order based on the claim that a different set of facts now requires equitable modification, it must be shown that these were "controlling facts" and, of course, they must arise after the entry of the final decree. *See also DeFilippis v. United States*, 567 F.2d 341 (7th Cir.1977); *Mayberry v. Maroney*, 558 F.2d 1159 (3d Cir.1977); *Public Serv. Comm'n v. Schaller*, 157 Ind.App. 125, 299 N.E.2d 625 (1973). In this case, the court-ordered injunctive relief was that the defendant

"shall maintain the roadway in question at the width no wider at any point than it presently exists."

The roadway at issue was an express right-of-way given by deed. It did not have a metes and bounds description. After the 1980 decree, Alla prepared a professional survey of the right-of-way as it was actually then used. Subsequently, the defendant, Mr. Johnson, acquired the right-of-way from Alla. Mr. Johnson contended he needed additional width on the right-of-way in order to accommodate his trucks.

■ The trial court stated in its January 28, 1988 order that its 1980 order

> "was entered in the narrowest manner practicable because of the fact that the then defendant, i.e., Hubert 'Bud' Bruce, had acted in a contemptuous and unconcerned manner towards the plaintiff landowners, but the court is equally convinced that the successor in title, Darwin F. Johnson, is quite the opposite in his concern for the plaintiffs and accordingly should not be penalized for the 'bad behavior' of the former owner."

The court went on to establish a fourteen-foot roadway with wider turning radiuses at the curves. This cannot be considered a controlling fact. It was an expression of opinion.

■ The primary issue was the width of the roadway. Of substantial importance was the survey which defined the actual use and thereby the width of the roadway following the 1980 injunction order. The deed establishing the right-of-way, while not identifying the width of the road, did refer to its location as that "certain road." The general rule with regard to the limitations surrounding an express easement is set out in Syllabus Point 1 of *Hoffman v. Smith*, 172 W.Va. 698, 310 S.E.2d 216 (1983):

> "Where one acquires an easement over the property of another by an express grant, the use of that easement must be confined to the terms and purposes of the grant."

Where there is no precise width to an express right-of-way, we have adopted the

view that the actual use made will control. *Palmer v. Newman,* 91 W.Va. 13, 112 S.E. 194 (1922). *See also Rhodes Cemetery Ass'n v. Miller,* 122 W.Va. 139, 7 S.E.2d 659 (1940); *Hoffman v. Smith, supra.* The actual use standard was settled in the 1980 decree. Its limits were known to the parties, as evidenced by the plat prepared by a surveyor for the dominant estate, the coal company. There were no changes to these controlling facts to warrant the trial court's reopening the matter under Rule 60(b)(5).

For the foregoing reasons, we reverse the judgment of the Circuit Court of Monongalia County and the case is remanded.

Reversed and Remanded.