557 S.E.2d 390

**Herbert Dale STOVER, Plaintiff Below, Appellee,**

v.

**Morris MILAM, Defendant Below, Appellant.**

**and**

**Herbert Dale Stover, Plaintiff Below, Appellant,**

v.

**Morris Milam, Defendant Below, Appellee.**

**Nos. 29762, 29763.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 7, 2001.

Decided Dec. 7, 2001.

338

Thomas K. Fast, Fast Law Office, Fayetteville, for appellant, Herbert Dale Stover.

Clyde A. Smith, Jr., Lynch, Mann, Smith & Bibb, Beckley, for appellant, Morris Milam.

PER CURIAM:

This consolidated appeal arises from the September 19, 2000, order entered by the Circuit Court of Raleigh County. In that order, the lower court adopted a metes and bounds description for a right-of-way, the location and width of which has been repeatedly disputed by the owners of the servient estate, upon which the right-of-way is situate, and the dominant estate, which is accessed thereby. Despite the circuit court's attempts to fairly and accurately determine the boundaries of the right-of-way, both parties appealed from this order. Upon a review of the parties' arguments, the pertinent authorities, and the record submitted for appellate consideration, we affirm, in part, and vacate, in part, the decision of the circuit court. Insofar as the circuit court adopted a metes and bounds description of the subject right-of-way, we affirm the circuit court's order. However, we vacate that portion of the circuit court's ruling which limited Mr. Stover's ability to erect markers on his property to denote the easement's borders.

I.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Stover owns a parcel of real estate [hereinafter referred to as the "servient es-

tate"] located in Raleigh County, West Virginia. Mr. Milam owns property [hereinafter referred to as the "dominant estate"] that is adjacent to Mr. Stover's parcel, which also is situate in Raleigh County. When Mr. Milam purchased his property, his grantor's deed additionally conveyed to him a corresponding right-of-way, that traverses Mr. Stover's land, to enable him to access his dominant estate.[1] In May, 1996, the parties began disputing the width[2] and/or location of this right-of-way, leading Mr. Stover to file suit against Mr. Milam in the Circuit Court of Raleigh County to obtain a definite determination thereof and associated injunctive relief.

The circuit court, upon considering the matter without a jury, ruled, by order entered August 19, 1996, that

[i]n the case at bar, there is no precise width to the right of way granted. The court observes that the use of the subject right of way has been established since 1950. The significant change to usage has been the activity of the plaintiff [Mr. Stover] in putting large posts on the inside of the subject curve, and laying logs on the outside of the curve, which have the sole purpose of restricting the use of the right of way by making passage more difficult. There is no question, based upon the court's inspection, that such posts and logs inhibit travel over the easement by making it exceedingly difficult to negotiate.

**Accordingly,** the court is of the opinion to and doth **ORDER, ADJUDGE** and **DECREE** as follows:

1.    That the defendant [Mr. Milam] be permanently enjoined from doing any act to further increase the width, curvature and/or location of the subject right of way or easement as it presently extends over, across and through the subject real estate owned by plaintiff, situate near Harper, Trap Hill District, Raleigh County, West Virginia.

2.    That the plaintiff be directed and hereby required to remove forthwith the large posts on the inside of the curve and the logs on the outside of said curve to the right of way or easement which is the subject of this dispute.

3.    That upon removal of the aforesaid posts and logs, the subject right of way or easement shall become fixed and determined as to its properly used width, curvature and location, according to law. . . .

Following this ruling, Mr. Milam appealed to this Court for relief from the circuit court's judgment. This Court rejected the appeal by order entered September 3, 1997.

Thereafter, on October 2, 1997, Mr. Stover petitioned the circuit court to find Mr. Milam in contempt of court for widening the aforementioned right-of-way in violation of the circuit court's August, 1996, order. By order entered August 3, 1998, the court denied Mr. Stover's petition and determined that Mr. Milam was not in contempt. In support of this ruling, the circuit court found that "there will unavoidably be some slight alterations caused by weather and use over time and that any alterations to the roadway which have occurred as of the date of the hearing were due to proper usage of the subject easement within the contemplation of the Court's original Order." The court further warned Mr. Milam to refrain from intention-

---

1.    Apparently, Mr. Milam's grantor had received the right-of-way at issue herein when he purchased the property forming the dominant estate in 1950. The pertinent language from the grantor's deed provides:

Received of J.M. Lafferty the sum of One Dollar ($1.00) and other consideration not hereinafter mentioned, in consideration of which Morris Stover and Florence Stover, his wife, do hereby grant and convey unto said J.W. [sic] Lafferty, his heirs and assigns, the right and easement to construct and use and maintain a roadway for horses, cars, trucks and the like as semi-public way from the land of said J.M. Lafferty on and over our land, situate in

the Trap Hill District, County of Raleigh, and State of West Virginia and bounded:
    On the North by the Bill Willard Property
    On the East by the said J.M. Lafferty Property
    On the South by the Herbert Harper Property
    On the West by the Railroad
to and from and over said premises to the public highway.

2.    It seems that Milam's primary concern regarding the right-of-way's width relates to the ability of emergency vehicles to navigate this route to reach his house.

ally widening the right-of-way and precluded Mr. Stover from "installing railroad ties, posts or other impediments which would be artifices designed to restrict travel over the roadway."

In response to the circuit court's order, Mr. Stover filed motions pursuant to Rules 59(e)[3] and 60(b)(5)[4] of the West Virginia Rules of Civil Procedure on August 4, 1998. Through these motions, Mr. Stover sought to alter or amend the circuit court's contempt order by requesting the court to adopt a more definite description of the property in question so that each party would know the precise boundaries of the right-of-way. Mr. Stover additionally sought relief from the court's contempt order of August 3, 1998, as well as from its original order on the merits, entered August 19, 1996, to permit him to "place posts, fences and/or plants on his property, not to impede or inhibit travel over the roadway but to clearly mark and define where his ownership rights begin and where [Mr. Milam's] usage rights of the roadway end."

By order entered September 19, 2000, the circuit court granted, in part, Mr. Stover's motions. In this regard, the court adopted the results of an August, 1996, survey, that was later revised in May, 1997,[5] and determined that the right-of-way's metes and bounds description should correspond with the revised survey calculations to include that property referred to as "additional road width".[6] The court further ordered that

1. The configuration of the roadway in question is hereby fixed as it is portrayed and shaded in red on that map attached hereto as "Exhibit A" [reflecting the revised survey results] and made a part of this order by express reference thereto.

2. Plaintiff [Mr. Stover] shall be permitted to install three wooden poles or three iron bars spaced approximately ten (10) feet apart on the outside edge of the curve of this roadway, *if and only* if these conditions are met:

   A. Plaintiff retains at his expense a licensed surveyor to revise the existing map attached hereto as "Exhibit A" to show the exact measurements of the roadway shaded in red (at appropriate points);

   B. Plaintiff is assisted in the placement of the three wooden poles or iron bars as aforesaid by a licensed surveyor who will ensure that such poles or bars are properly placed on the outside edge of such curve.

3. Plaintiff is hereby prohibited from placing or installing any logs, poles, bars, boards, fences or other obstructions of any kind on or near the edges of the subject roadway, except as heretofore provided, so that there will be no unreasonable impediment to the lawful and free use of such easement by the defendant [Mr. Milam].

---

3. Rule 59(e) of the West Virginia Rules of Civil Procedure permits a party to move the court to alter or amend its judgment: "[a]ny motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment."

4. Pursuant to Rule 60(b)(5) of the West Virginia Rules of Civil Procedure,

   [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application. . . .

5. Mr. Stover commissioned the August 23, 1996, survey in response to the circuit court's order of August 19, 1996. Apparently, the alleged acts of

contempt by Mr. Milam of which Mr. Stover complained to the court in 1997 resulted in the widening of the right-of-way and are reflected in Mr. Stover's revised survey dated May 15, 1997.

6. Based upon the circuit court's August, 1996, order, it appears that the surveys in question formalize the court's prior ruling whereby it established the right-of-way's boundaries as evidenced by a visual inspection of the route's actual use. Mr. Stover contends, however, that the revised survey performed in May, 1997, actually widens the right-of-way recognized by the court in its August 19, 1996, order by adding approximately 203.14 square feet to the right-of-way's width as compared with the survey of August, 1996.

4. Defendant shall be permanently enjoined from doing any act to further increase the width, curvature and/or location of the subject right-of-way or easement as it is portrayed on that map attached hereto as "Exhibit A"[.]

From this order of the circuit court, both Mr. Stover and Mr. Milam appeal to this Court.

## II.

## STANDARD OF REVIEW

On appeal to this Court, the parties contest various rulings of the circuit court. Generally, when reviewing a circuit court's decision, we apply a three-part standard of review:

In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. pt. 2, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997). *See also* Syl. pt. 6, *Daugherty v. Ellis,* 142 W.Va. 340, 97 S.E.2d 33 (1956) ("The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding."). As the various errors assigned concern different principles of law, however, multiple standards of review apply to our consideration of those issues. Therefore, more specific standards of review will be applied below in our discussion of the parties' assignments of error.

## III.

## DISCUSSION

The parties challenge the circuit court's rulings granting, in part, Mr. Stover's mo-

tions pursuant to Rules 59(e) and 60(b)(5) of the West Virginia Rules of Civil Procedure. We will consider the assigned errors in turn.[7]

### A. West Virginia Rule of Civil Procedure 59(e)

The parties first complain that the circuit court committed various errors in granting Mr. Stover's Rule 59(e)[8] motion to alter or amend its order wherein it found that Mr. Milam was not in contempt of court. During the proceedings below, the circuit court granted Mr. Stover his requested relief by adopting a metes and bounds description of the right-of-way to establish, for the benefit of both parties, the boundaries thereof. In response to this ruling, Mr. Stover complains that the circuit court erred by (1) basing the right-of-way's boundaries on the revised survey calculations rather than on the original survey that was obtained to preserve the court's original August, 1996, ruling and (2) re-visiting its prior ruling by changing the boundaries of the right-of-way during its adoption of a metes and bounds description thereof. Mr. Milam counters that the circuit court (1) erroneously based its decision on recent survey calculations that are inconsistent with the easement's historical use; (2) improperly excluded reference to witness testimony proffered by Mr. Milam in its final order; and (3) failed to appreciate the wording and intent of the original instrument creating the right-of-way in question.

When reviewing a circuit court's order concerning a Rule 59(e) motion, we typically apply the standard of review applicable to the underlying judgment that the motion seeks to alter or amend.

The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va.R.Civ.P. 59(e), is the same standard that would

---

7. At the outset of our discussion, we wish to note that Mr. Milam, in his response to Mr. Stover's appellate brief, contends that Mr. Stover's motions before the circuit court were untimely filed as they related to the circuit court's original ruling in this matter, entered on August 19, 1996. We disagree with this characterization of the motions, and, as we find that they were properly

and timely filed in response to the circuit court's order denying Mr. Stover's contempt petition, we proceed to consider the remaining issues raised by the parties.

8. For the text of this Rule, see *supra* note 3.

apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998). Thus, since the judgment underlying Mr. Stover's Rule 59(e) motion is the court's August, 1998, order refusing to hold Mr. Milam in contempt, we apply the standard of review applicable to such a proceeding:

> In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syl. pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

Having established the pertinent standard of review, we now consider the parties' arguments. Viewed collectively, the errors assigned by the parties regarding the circuit court's Rule 59(e) ruling all pertain to that tribunal's fixation of the easement's boundaries and its treatment of the evidence submitted by the litigants with respect thereto. The crux of this controversy stems from the fact that the deed creating this right-of-way did not provide definite boundary lines therefor.[9]

■ In prior cases involving similar boundary disputes, we have held that

> [w]here the width of a right of way is not specified in the grant, nor determinable therefrom, the scope and purpose of the deed creating it, the situation and use of the property, and the intent of the parties will be considered, so as to provide a reasonable, safe and convenient way for the purposes for which it was intended.

Syl. pt. 2, *Palmer v. Newman*, 91 W.Va. 13, 112 S.E. 194 (1922). *See also Jenkins v. Johnson*, 181 W.Va. 281, 284–85, 382 S.E.2d 334, 337 (1989) (per curiam) ("Where there is no precise width to an express right-of-way, we have adopted the view that the actual use made will control." (citations omitted)). *Cf.* Syl. pt. 1, *Hoffman v. Smith*, 172 W.Va. 698, 310 S.E.2d 216 (1983) ("Where one acquires an easement over the property of another by an express grant, the use of that easement must be confined to the terms and purposes of the grant."). Upon a review of the circuit court's ruling adopting the metes and bounds description contained in its September, 2000, order, we cannot find that the court either misapplied the applicable law or clearly erred in rendering its findings of fact. *See* Syl. pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193. In fact, the record presented for our consideration indicates that the circuit court properly and thoroughly considered the property's historical use, the deed granting the same, the safety of the involved roadway, the various survey and expert evidence, and the actual right-of-way, itself,[10] in adopting the metes and bounds description contained in its September 19, 2000, order. Finding no abuse of discretion, we affirm the circuit court's ruling whereby it granted Mr. Stover's Rule 59(e) motion and adopted a metes and bounds description of the right-of-way at issue herein.

### B. West Virginia Rule of Civil Procedure 60(b)(5)

■ For his second assignment of error, Mr. Stover [11] complains that the circuit court improperly limited his ability to construct boundary markers on his property adjacent to the right-of-way despite the fact that the court definitely established the easement's borders in its September, 2000, order thereby rendering this restriction unnecessary. Pursuant to its prior orders, the court, on

---

**9.** See *supra* note 1 for the pertinent text of this instrument.

**10.** In his September 19, 2000, order, the Honorable H.L. Kirkpatrick, III, Judge of the Circuit Court of Raleigh County indicates that he "made his last physical examination of the roadway" in June, 1998. The record also reflects that Judge Kirpatrick examined the property in question prior to rendering his initial decision in this case on August 19, 1996.

**11.** All of Mr. Milam's assignments of error relate to the circuit court's metes and bounds ruling in its decision of Mr. Stover's Rule 59(e) motion.

August 19, 1996, "required [Mr. Stover] to remove forthwith the large posts on the inside of the curve and the logs on the outside of said curve to the right-of-way or easement which is the subject of this dispute" and, on August 3, 1998, prevented him from "installing railroad ties, posts or other impediments which would be artifices designed to restrict travel over the roadway."

In his motion to the circuit court pursuant to Rule 60(b)(5) of the West Virginia Rules of Civil Procedure,[12] Mr. Stover requested the circuit court to set aside that portion of its prior orders to permit him to "place posts, fences and/or plants on his property, not to impede or inhibit travel over the roadway but to clearly mark and define where his ownership rights begin and where [Mr. Milam's] usage rights of the roadway end." Ruling upon Mr. Stover's motion, the circuit court, by order entered September 19, 2000, observed that it was

> somewhat ambivalent regarding the placement of poles, fences and other obstructions along the edge of the right-of-way. In keeping with prior rulings, the court abhors the intentional obstruction of lawful and free passage along any roadway. But on the other hand, without some guard to prevent future encroachment, and a measuring stick to determine if the roadway has actually been expanded, the court is fearful that we will continue to rehash this matter again and again in future proceedings. Thus, a compromise is in order. The placement of some poles or bars will be permitted as hereinafter set forth.

This "permission" was then phrased in the court's final mandate as follows:

> Plaintiff [Mr. Stover] shall be permitted to install three wooden poles or three iron bars spaced approximately ten (10) feet apart on the outside edge of the curve of

this roadway, *if and only* if these conditions are met:

> A. Plaintiff retains at his expense a licensed surveyor to revise the existing map attached hereto as "Exhibit A" to show the exact measurements of the roadway shaded in red (at appropriate points);
>
> B. Plaintiff is assisted in the placement of the three wooden poles or iron bars as aforesaid by a licensed surveyor who will ensure that such poles or bars are properly placed on the outside edge of such curve.

> Plaintiff is hereby prohibited from placing or installing any logs, poles, bars, boards, fences or other obstructions of any kind on or near the edges of the subject roadway, except as heretofore provided, so that there will be no unreasonable impediment to the lawful and free use of such easement by the defendant [Mr. Milam].

On appeal to this Court, Mr. Stover reiterates his complaint that he be allowed to use his property as he desires so long as he refrains from impinging upon Mr. Milam's right to use the subject easement.

Typically, this Court accords broad discretion to a circuit court deciding a Rule 60(b) motion. "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974). Here, however, we conclude that the circuit court has abused its discretion.

While we appreciate the circuit court's extreme frustration with the parties in this case and their persistent dispute which the court had, on numerous occasions, attempted to fairly and equitably resolve once and for all,[13]

---

**12.** The relevant portion of this Rule is quoted in note 4, *supra.*

**13.** The court's disappointment is also apparent from its general comments about the parties' controversy, as evidenced by its September 19, 2000, order, wherein it recalled its original ruling in this case and the parties' subsequent reactions thereto:

> It was therefore the court's intention to fix the easement at its then-existing configuration so as to lay this matter to rest, forever.
>
> Time has proven the court to be overly optimistic that a final resolution of this dispute had been achieved, however....
>
> Because this controversy continues to boil, the court concedes that it must precisely define the boundaries of the subject easement; to that

there simply is no authority to support the continued restriction of Mr. Stover's use of his own property. In fact, insofar as the circuit court's ruling adversely affects Mr. Stover's property rights, the law clearly provides that he may, in fact, use his property as he sees fit, as long as he does not impinge upon Mr. Milam's right to use the easement at the heart of this controversy.

According to the Constitution of this State, "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." W.Va. Const. art. III, § 10. *Accord* U.S. Const. amend. XIV, § 1. This protection is afforded to "any significant property interest," *Don S. Co., Inc. v. Roach*, 168 W.Va. 605, 610, 285 S.E.2d 491, 494 (1981) (citations omitted), and includes not only the actual physical possession of property but the right to use the same.

> "Property" within the meaning of our Constitution against the taking or damaging of private property without just compensation paid or secured to be paid comprehends not only the thing possessed, but the right also to use and enjoy it, and every part of it, and in the case of real estate to the full limits of the boundary thereof.

Syl. pt. 1, *Fruth v. Board of Affairs*, 75 W.Va. 456, 84 S.E. 105 (1915), *overruled on other grounds by Farley v. Graney*, 146 W.Va. 22, 119 S.E.2d 833 (1960). Because this constitutional protection prohibits the encumbrance of one's property absent sufficient justification,

> [w]herefore any thing done by a state or its delegated agent, as a municipality, which substantially interferes with the beneficial use of land, depriving the owner of lawful dominion over it or any part of it, and not within the general police power of the state, is the taking or damaging of private property without compensation inhibited by the Constitution.

Syl. pt. 2, *Fruth*, 75 W.Va. 456, 84 S.E. 105. *See also* Syl. pt. 2, *Lovett v. West Virginia Cent. Gas Co.*, 65 W.Va. 739, 65 S.E. 196 (1909) ("The impairment of the utility of one's property by the direct invasion of his private domain is a taking of his property, within the constitutional meaning, though the owner has not less of material things than he had before.").

Based upon these principles, we can reach no conclusion other than that Mr. Stover should be permitted to erect markers on his property to denote the boundary lines of the right-of-way if he so chooses. Accordingly, the circuit court's ruling to the contrary is hereby vacated. We cannot emphasize enough, however, that Mr. Stover should exercise the utmost caution in constructing such border markings in order to ensure that Mr. Milam's right to use the easement is not adversely affected. In rendering this decision, we wish finally to observe that we believe the circuit court acted with no ill will towards the parties herein and did not possess a malicious intent when it imposed this unlawful restriction upon Mr. Stover. Rather, our review of the record suggests that the circuit court was merely striving to achieve the laudable goal of judicial economy by attempting to definitively resolve this very contentious dispute.

### IV.

### CONCLUSION

For the foregoing reasons, we affirm, in part, and vacate, in part, the September 19, 2000, order of the Circuit Court of Raleigh County.

Affirmed, in part, and Vacated, in part.

extent, the plaintiff's motions should be granted.