**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Daniel Lee Bailes and Elizabeth Ann Bailes,**
**Respondents/Counter-Plaintiffs Below, Petitioners**

**vs.)  No. 21-1008** (Nicholas County 21-P-51)

**F. Bruce Tallamy and Cynthia Tallamy,**
**Petitioners/Counter-Defendants Below, Respondents**


**MEMORANDUM DECISION**


Petitioners appeal the circuit court's December 13, 2021, bench trial order finding in respondents' favor on petitioners' trespass counterclaim, determining the location of an express right-of-way for respondents' benefit over petitioners' property, permanently enjoining petitioners from interfering with respondents' use of the right-of-way for ingress and egress, and ordering that gates along the right-of-way remain open unless the parties agree otherwise.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The parties are owners of adjoining tracts of land that, prior to June 18, 1968, were part of the same tract. In the June of 1968 deed conveying the tract now owned by petitioners, the grantors "reserve[d] unto themselves a right of way, as presently located, over the [land now owned by petitioners] as a means of ingress and egress to [the tract now owned by respondents]." Subsequent deeds conveying petitioners' servient estate, including the deed conveying to petitioners, refer to the 1968 deed and provide for "1. A right of way over the above tract of land as a means of ingress and egress to [respondents' tract]." Respondents acquired their property in 2004, and petitioners acquired their property on May 12, 2021.

In August of 2021, respondents, alleging that petitioners had placed two gates across the aforementioned express right-of-way, initiated the instant action by seeking to temporarily and permanently enjoin petitioners from interfering with or impeding respondents' use of the right-of-way.[2] Petitioners answered and counterclaimed for trespass.[3] Petitioners alleged that while they

---

[1] Petitioners appear by Daniel K. Armstrong, and respondents appear by Gregory A. Tucker.

[2] The gates, in fact, existed on petitioners' property prior to their purchase of it.

[3] Petitioners asserted additional counterclaims, but we need not address them because petitioners do not challenge the circuit court's rulings in respondents' favor on them.

1

were under contract to purchase their property, a gravel roadway was laid and several culverts were installed on their property, which directed water in a manner that damaged structures on their property.[4] Petitioners also alleged that respondents damaged their property in various ways at various times, including during the construction of the gravel roadway.

At a "motions hearing" early in the proceedings, respondents requested that the circuit court order petitioners to cease interfering with their use of the right-of-way. In response, petitioners argued that the grant of the right-of-way contained in the deed was void for uncertainty. The court disagreed with petitioners but agreed that questions of fact existed, including whether the right-of-way had been "misused or overused," so it set the matter for a bench trial "for the purpose of hearing evidence as to the width of the right-of-way at issue and each party's respective claims for damages." It further found that respondents "have a valid right-of-way as a matter of law over the [petitioners'] property" and ordered that petitioners "not interfere or impede with the [respondents'] use of the existing roadway." At a later "motions hearing," the court heard the parties' testimony regarding the usage of gates located on petitioners' property. Finding that petitioners' use of the gates to create an enclosure for their many animals ran counter to respondents' agreement with the prior owner of petitioners' property and impeded respondents' travel, the court ordered that the gates over the right-of-way "remain open at all times until further [o]rder of the [c]ourt."[5]

At the conclusion of the bench trial—during which the court, over two days, heard testimony and received documentary evidence from the parties, various witnesses whose knowledge of the parties' respective pieces of property went back decades, respondents' contractor who installed culverts and laid the gravel roadway over what was claimed to be the right-of-way, and an engineer retained by petitioners who rendered opinions on the quality of the contractor's work and claimed that drainage issues could cause damage to structures on petitioners' property in the future—the circuit court found for respondents on petitioners' trespass claim and concluded that the right-of-way "exists where [the contractor] conducted his work."[6] The court ordered that the contractor "finish clearing out the roadway in a workmanlike manner in a width which he determines will provide for safe and reasonable ingress and egress (including drainage) pursuant to the language contained in the deeded right-of-way" and that the roadway be surveyed and the resultant map or plat be recorded. It further ordered that the gates on petitioners' property remain

---

[4] The contractor's handwritten invoice for this work, which is not entirely legible, appears to reflect that some of the work was completed at least a few days after petitioners closed.

[5] Petitioner Elizabeth Ann Bailes testified that petitioners have a registered herd of goats, a donkey, approximately eighty-two chickens, approximately eleven guineas, approximately ten ducks, two geese, five dogs, sixteen cats, seven hogs, and two calves. Respondent F. Bruce Tallamy testified that the gates are in disrepair and difficult to open. Respondents also argued that, because petitioners' numerous chickens can easily walk under the lowest gate rung, their claim of needing to use the gates to enclose their animals was merely a "pretext" for impeding respondents' use of the claimed right-of-way.

[6] The court also noted that it had "previously held that there is a valid right-of-way located in the current placement."

2

open unless the parties agreed otherwise, as petitioners' use of the area between the gates "as a livestock pen . . . would unreasonably interfere with the [respondents'] safe and reasonable use of the right-of-way."

Petitioners appeal from the circuit court's bench trial order, which we review under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat'l Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996).

In their first assignment of error, petitioners assert in passing that the right-of-way grant should be deemed void for uncertainty, but they concede that this Court has held that "[i]f the description of the land conveyed in a deed be general, the deed will not be held void for uncertainty, if by the aid of extrinsic evidence it can be located and its boundaries ascertained." Syl. Pt. 2, *Ratcliff v. Cyrus*, 209 W. Va. 166, 544 S.E.2d 93 (2001) (quoting Syl. Pt. 2, *Bolton v. Harman*, 98 W. Va. 518, 128 S.E. 101 (1925)). Accordingly, petitioners acknowledge that the location of the right-of-way could be "fix[ed] . . . through parol[] evidence" and center the bulk of their argument on their claim that the circuit court erred in determining the location of the right-of-way at the early motions hearing without the aid of extrinsic evidence. Although the court, by preventing petitioners from interfering with respondents' use of "the existing roadway," in effect, determined at the early motions hearing that "the existing roadway" was the right-of-way identified in petitioners' deed, we find no error as the court ultimately held a two-day bench trial at which extrinsic evidence was introduced regarding the location and boundaries of the right-of-way. Petitioners do not claim that they were prevented from introducing evidence on these issues, and, indeed, the majority of witnesses who testified did so on petitioners' behalf. Notably, although petitioners' witnesses refused to state that a "roadway" existed over petitioners' property, they nevertheless acknowledged the existence of, variably, a "four-wheeler path," a "farm road," a "small trail," or a "cow path" in the area fixed by the court as the location of the right-of-way at issue. Accordingly, we find that any error in the court's earlier ruling was harmless as the parties later introduced extrinsic evidence from which the court determined the location and boundaries of the right-of-way.

Taking a related argument out of turn, petitioners claim in their third assignment of error that respondents' evidence at the bench trial was insufficient to prove the location and width of the right-of-way. In support, petitioners describe the evidence adduced as "conflicting," "vague," and descriptive more of the "historical use" of petitioners' property than of the location and width of the right-of-way. Petitioners also argue that the installation of culverts extended the width of the right-of-way beyond that contemplated by the 1968 deed. Preliminarily, we observe that these arguments, at their root, are challenges to the court's findings of fact, which petitioners have not shown to be clearly erroneous so will not be set aside, or the court's credibility determinations,

3

which are likewise viewed deferentially. *Phillips v. Fox*, 193 W. Va. 657, 661-62, 458 S.E.2d 327, 331-32 (1995) (noting that findings of fact are not set aside "unless clearly erroneous" and that findings "based on determinations regarding the credibility of witnesses" are accorded "even greater deference"). Nevertheless, we observe that many witnesses, including petitioners' witnesses, located the right-of-way in the location fixed by the court. And while different estimations of the width of the right-of-way were offered, the contractor's testimony that the right-of-way, following competition of his work and inclusive of the culverts, is no more than twenty-four feet wide, accords generally with the testimony of a witness that the right-of-way was, as it existed before the contractor's work, "about [twenty] feet wide." Accordingly, the court acted within its discretion in fixing the width as that necessary for ingress and egress, as determined by the contractor.[7] *See Rhodes Cemetery Ass'n v. Miller*, 122 W. Va. 139, 144, 7 S.E.2d 659, 661 (1940) ("The trial chancellor, having in mind the purposes for which the way was intended, fixed the width at sixteen and one-half feet. There was no error in this ascertainment. It was within his sound discretion to determine what would be a reasonable width.").

Next, petitioners argue that the court erroneously ordered their gates to remain open. It is true that "[t]he grant of 'a free right of way' through agricultural lands, without more, does not imply that gates may not reasonably be maintained across the way by the servient owner." Syl. Pt. 4, *Collins v. Degler*, 74 W. Va. 455, 82 S.E. 265 (1914). But the issue here is not just that petitioners sought to use their gates, it is that, assuming innocuous intentions, they sought to use the dilapidated and difficult-to-maneuver gates to create an enclosure for some or all of their numerous animals, which would require respondents to, at a minimum, corral those animals every time they wanted to enter or exit their property. Or, assuming less well-intentioned motivations, the issue is that the gates do not serve the claimed purpose and petitioners deliberately intended to interfere with respondents' use of the right-of-way. Although gates may reasonably be maintained, petitioners' use of their property cannot impinge upon respondents' use of the right-of-way. *See Stover v. Milam*, 210 W. Va. 336, 344, 557 S.E.2d 390, 398 (2001) ("[T]he law clearly provides that he may, in fact, use his property as he sees fit, as long as he does not impinge upon Mr. Milam's right to use the easement at the heart of this controversy."). Because, under the very specific facts of this case, allowing petitioners to use their gates would impinge upon respondents' use of the right-of-way, we find no error in the court's ruling.

Petitioners also claim error in the court's finding that respondents did not trespass on their property. Petitioners argue that respondents left gravel in and around their barn, installed culverts

---

[7] We also note that "[t]he duty to maintain an easement in such condition that it may be enjoyed is upon those entitled to its use, in the absence of some contractual or prescriptive obligation upon the owner of the servient estate to so maintain it." Syl. Pt. 4, *Moran v. Edman*, 194 W. Va. 342, 460 S.E.2d 477 (1995) (quoting Syl. Pt. 2, *Carson v. Jackson Land & Mining Co.*, 90 W. Va. 781, 111 S.E. 846 (1922)), *overruled on other grounds by O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010). Evidence was presented at trial that water pooled over the right-of-way and that it was covered in mud that one witness said was so deep it "came up to the top of my [muck] boots." Because respondents have a duty to maintain the right-of-way in a useable condition, we find the installation of the culverts did not render the court's ruling on width erroneous.

that improperly diverted water to petitioners' silo, damaged electrical lines in constructing the roadway, and sprayed herbicide. A "trespass" is "an entry on another man's ground without lawful authority, and doing some damage, however inconsiderable, to his real property." *EQT Prod. Co. v. Crowder*, 241 W. Va. 738, 828 S.E.2d 800 (2019). And to recover damages for that trespass, as petitioners sought, it was incumbent upon them to establish the amount of those damages. Syl., *Malamphy v. Potomac Edison Co.*, 140 W. Va. 269, 83 S.E.2d 755 (1954). The only evidence of damages petitioners offered related to these allegations of trespass was testimony from an engineer that one culvert was in need of repair work totaling $12,000 because it was not properly directing the flow of water, which could damage petitioners' property in the future. But, when the engineer was shown a picture of the area as it existed before the installation of the culvert, with the area covered in "deep mud and pooling water," the engineer admitted that the contractor's work had improved, rather than damaged, the area. The court, therefore, concluded that petitioners' claim of damages was "speculative" and "without credibility as it relates to any additional work needed." Without proof of damages, the court did not err in finding for respondents on petitioners' trespass claim.[8]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 5, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[8] Petitioners raise one more assignment of error, claiming that the court's determinations on their witnesses' credibility were clearly erroneous. Other than highlighting conflicts in the evidence, petitioners offer no basis for this Court to overturn the court's credibility determinations or otherwise disturb the court's resolution of the evidence presented. *See Phillips v. Fox*, 193 W. Va. 657, 661-62, 458 S.E.2d 327, 331-32 (1995).