STATE OF WEST VIRGINIA

**Roman Realty, LLC,**
**Petitioner,**

**v.) No. 22-587** (Monongalia County 20-C-109)

**The City of Morgantown,**
**Respondent.**

FILED

June 11, 2024

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Roman Realty, LLC ("Petitioner"), by its counsel, Kayla A. Cook, Michael C. Cardi, and Jordan C. Maddy, appeals the Circuit Court of Monongalia County's award of summary judgment to The City of Morgantown ("Respondent"), appearing by its counsel, Jonathan J. Jacks and Nathaniel D. Griffith. In its order granting summary judgment, the circuit court denied Petitioner's petition for writ of mandamus that sought to compel Respondent to institute eminent domain proceedings to determine just compensation for damages to Petitioner's property, located at 512 and 516 Grant Avenue in Morgantown, West Virginia ("Petitioner's property"). In support of its order, the circuit court concluded that Petitioner had another adequate remedy, precluding the issuance of a writ of mandamus. On appeal, Petitioner argues that the circuit court erred in granting summary judgment because (1) tort actions do not provide an adequate remedy, (2) Petitioner is entitled to an impartial jury of twelve freeholders under the West Virginia Constitution, and (3) attorney's fees are generally unavailable in tort cases. After review, we find that the circuit court did not err in granting summary judgment because Petitioner did not meet its burden to show a lack of another adequate remedy.

This Court has considered the parties' briefs, the record on appeal, and the oral argument of the parties. Because there is no substantial question of law and no prejudicial error, a memorandum decision affirming the circuit court is appropriate pursuant to Rule 21 of the West Virginia Rules of Appellate Procedure.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's property fronts on Grant Avenue, in the Sunnyside neighborhood of Morgantown, West Virginia. Above and behind Petitioner's property is a fifteen-foot-wide alley,[1] owned by Respondent. The alley runs parallel to Grant Avenue and was never developed by Respondent to allow vehicular traffic. As a part of improvements to the area, Respondent contracted to install a twelve-inch drainage pipe within the alley's right of way. Respondent engaged the Green River Group, LLC to complete the construction for this project. ("Green River").

---

[1] The alley is referred to in the briefs as "Alley D" and "Model Alley." The name of the alley is insignificant, thus, we will simply call it "the alley" or "alley."

In its verified petition for writ of mandamus to compel eminent domain proceedings, Petitioner alleged that during project construction, eleven trees were removed from its property and "approximately 1,000 square feet of Petitioner's property was excavated and used as a dump site." Additionally, Petitioner stated that eight additional trees were heavily damaged by the project. Finally, Petitioner averred that the slope of its property was greatly altered and surface water increased as a result of Respondent's activities, leading to "a massive issue of surface water" on Petitioner's property.

Respondent moved to dismiss the petition, which motion was denied by the circuit court. Following a period of discovery, Respondent moved for summary judgment. Following briefing and a hearing, the circuit court granted summary judgment to Respondent, finding that Petitioner had another adequate remedy against Respondent in tort. Specifically, the circuit court found:

> Not only does the case law support another adequate remedy, it is confirmed by [Petitioner]'s pleadings. Here, [Respondent]'s improvement project did not call for the use of [Petitioner]'s land. Rather, [Respondent]'s contractor was to simply place a storm drain line within an existing 15[-]foot parcel of [Respondent]'s property. [Petitioner] alleges its property was taken and damaged by trespass and/or negligence by [Respondent] and/or Green River. This scenario is precisely on point with the cases holding a remedy exists at common law. Existing case law holds a civil action is not only adequate, but the proper and required course of action.
>
> . . . .
>
> [I]n a civil action for damages, [Petitioner] can recover the cost of repairing any alleged deficiencies – putting it in the same place as prior to the alleged allegations. Conversely, [Petitioner] can recover the value of the land if such repairs cannot be completed. This is precisely the same remedy [Petitioner] is seeking through its writ of mandamus – either an award of damages to the residual of the property, or the value of the property allegedly taken.

Following the circuit court's entry of its order granting summary judgment, Petitioner appealed to this Court.

## II. STANDARD OF REVIEW

As we are reviewing the circuit court's grant of summary judgment, our firmly established review in such cases is de novo: "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, we have consistently held that a party must establish three elements to prevail on a petition for writ of mandamus: "A writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt.

2

2, *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969). Finally, the burden to prove all three *Kucera* elements falls upon the Petitioner. *State ex rel. Richey v. Hill*, 216 W. Va. 155, 160, 603 S.E.2d 177, 182 (2004) ("As 'the burden of proof as to all the elements necessary to obtain mandamus is upon the party seeking the relief[,]' 52 Am. Jur. 2d *Mandamus* § 3 at 271 (2000) (footnote omitted), a failure to meet any one of them is fatal.").

With these factors in mind, we will now analyze the arguments raised in this appeal.

## III. ANALYSIS

On appeal, Petitioner raises three assertions in support of its contention that the circuit court erred in its grant of summary judgment and denial of its petition for writ of mandamus. These three grounds are not meritorious. Petitioner first argues that tort actions do not provide an adequate remedy for the alleged damages to its property. Next, Petitioner avers that in a tort action, a jury would be comprised of six persons, rather than twelve freeholders, which deprives it of a procedural protection. Finally, Petitioner argues that attorney's fees are unavailable in tort cases but are recoverable in a mandamus proceeding. After review, we agree with the circuit court that Petitioner failed to meet its burden to establish the absence of another legal remedy, which is a prerequisite to the issuance of a writ of mandamus.[2]

A.    Absence of Another Adequate Remedy

Petitioner first argues that it cannot be properly compensated in a traditional tort action and Respondent must be compelled to institute eminent domain proceedings because of the constitutional requirement of just compensation. We disagree. The West Virginia Constitution provides:

> Private property shall not be taken or damaged for public use, without just compensation; nor shall the same be taken by any company, incorporated for the purposes of internal improvement, until just compensation shall have been paid, or secured to be paid, to the owner; and when private property shall be taken, or damaged for public use, or for the use of such corporation, the compensation to the owner shall be ascertained in such manner as may be prescribed by general law: *Provided,* That when required by either of the parties, such compensation shall be ascertained by an impartial jury of twelve freeholders.

W. Va. Const. art. III, § 9. We agree that the plain language of our Constitution provides that when property is taken or damaged for public use, just compensation must be paid to the property owners and have stated:

---

[2] Because the circuit court limits its analysis to the third *Kucera* factor, "absence of another adequate remedy," we do not examine the other two factors, namely a clear legal right and a legal duty.

3

> [T]he Constitution . . . now provides that private property shall not be injured by public use without compensation. It is no longer an injury without a wrong, and although no method is prescribed for obtaining redress, or for ascertaining the damages prior to the injury by general law, a suit in case is maintainable.

*White v. City of Charleston*, 98 W. Va. 143, 147, 126 S.E. 705, 706 (1925). The constitutional requirement outlined in Article III, § nine provides that a landowner's property shall not be taken or damaged without "just compensation;" but it does not mention or require that such compensation be in the form of eminent domain. Indeed, the relevant constitutional provision expressly provides that such compensation shall be "ascertained in such manner as may be prescribed by general law." W. Va. Const. art. III, § 9. Clearly, a landowner's rights of recovery for damages to property through an available tort remedy protects a landowners' important rights as enshrined by Article III, § 9 of West Virginia's Constitution. Thus, our Constitution does not require an eminent domain proceeding be initiated to ascertain just compensation, merely that just compensation must be paid:

> Section 9, article 3 of the Constitution, which provides that "Private property shall not be taken or damaged for public use, without just compensation," requires action on the part of the state, its subdivisions or instrumentalities, to ascertain damages and compensate owners of property for the taking thereof or damage thereto, incident to any public improvement for which such property may be appropriated.

Syl. Pt. 1, *Hardy v. Simpson*, 118 W. Va. 440, 190 S.E. 680 (1937), *overruled on other grounds by State v. Sanders*, 128 W. Va. 321, 36 S.E.2d 397 (1945). Petitioner points us to numerous cases it alleges support the proposition that a writ of mandamus must issue to compel eminent domain proceedings for Petitioner to receive just compensation. However, those cases discuss the issue when the *State* is a party.[3] When the State is the party alleged to have taken or damaged property,

---

[3] Petitioner directs us to two cases that it alleges require a writ of mandamus to issue compelling a municipality to institute eminent domain proceedings. In *Flowers v. City of Morgantown*, 166 W. Va. 92, 272 S.E.2d 663 (1980), the property owners sought the institution of eminent domain proceedings to condemn certain property rights of "access, light, air and view." *Id.*, 166 W. Va. at 93, 272 S.E.2d at 664. This Court determined that the circuit court's order granting a motion to dismiss that complaint was improper. *Flowers* is easily distinguishable from this matter. The key issue before the Court in *Flowers* was not whether the landowner could recover through a tort action, but whether the circuit court erred in determining, upon a motion to dismiss, that the landowner had no right to just compensation for the deprivation of its "right to access, light, air and view." The *Flowers* Court reversed the circuit court's dismissal of the action, finding that "[a]s a general rule, the owner of land abutting on a public street is also in possession of easements of light, air and view." *Id.,* 166 W. Va. at 94-95, 272 S.E.2d at 664-65. However, we conclude that *Flowers* does not support the proposition that a writ of mandamus is *required* to

(continued . . .)

4

a writ of mandamus compelling an eminent domain proceeding is the only method by which an aggrieved property owner can compel the State to provide just compensation. "[U]nder the Constitution, suit cannot be maintained against the State because of the immunity of the State, and that for the reason no other available remedy exists, mandamus will lie against a governmental agency." *State ex rel. Wells v. City of Dunbar*, 142 W. Va. 332, 335, 95 S.E.2d 457, 459 (1956).

While a mandamus action seeking to compel the State to file an eminent domain proceeding is the only remedy available to a private landowner whose property is taken or damaged by the State without an eminent domain proceeding, such remedy is not required under the specific facts here, where the State's sovereign immunity is not implicated and statutory immunities were not alleged in the Respondent's amended motion for summary judgment. Indeed, under the facts of this case, the constitutional bar against maintaining a tort action against the State does not impact Petitioner's ability to bring a suit in tort against Respondent:

> In an action of trespass on the case against a municipality to recover alleged damages to real property caused by the wrongful raising of the grade and paving of a street upon which the property in question abuts it is error to refuse an instruction offered on behalf of the defendant informing the jury that if it believes from the evidence that the value of the property immediately after the change of grade and paving, including all benefits derived therefrom, if any, was more than its value immediately before the improvement was begun, then its verdict should be for the defendant. An order of the trial court setting aside a verdict because of that refusal will be affirmed.

---

compel a political subdivision to institute eminent domain proceedings when another adequate remedy is available in tort.

Petitioner also cites to Syllabus Point 6 of *Stover v. Milam*, 210 W. Va. 336, 557 S.E.2d 390 (2001), which provides:

> Wherefore any thing done by a state or its delegated agent, as a municipality, which substantially interferes with the beneficial use of land, depriving the owner of lawful dominion over it or any part of it, and not within the general police power of the state, is the taking or damaging of private property without compensation inhibited by the Constitution.

However, in *Stover*, the syllabus point was directed to the actions of the circuit court, which had enjoined Mr. Stover from placing boundary markers on his property. "Based upon these principles, we can reach no conclusion other than that Mr. Stover should be permitted to erect markers on his property to denote the boundary lines of the right-of-way if he so chooses." *Id.*, 210 W. Va. at 344, 557 S.E.2d at 398. We find that *Stover* is neither instructive nor germane to the issues in this appeal.

Syl., *Doss v. City of Mullens*, 133 W. Va. 351, 56 S.E.2d 97 (1949). The availability of another adequate remedy when a municipality is alleged to have taken or damaged property is a key distinction from cases that compel eminent domain proceedings against the State. *Doss* explains that: "[i]f the State for public use damages property without taking, although it cannot be sued, mandamus may require it to institute a condemnation proceeding in which the property owner may establish and recover his damages. However, if a municipality damages private property it may be sued[.]" *Id.*, 133 W. Va. at 353, 56 S.E.2d at 98 (citations omitted). *Doss* is just one in a litany of cases that have drawn this distinction. In *State ex rel. Firestone Tire & Rubber Co. v. Ritchie*, 153 W. Va. 132, 168 S.E.2d 287 (1969), we cited to nearly a century of legal precedent highlighting that difference:

> This principle is clearly stated in the syllabus of the *Mahone* case wherein it is stated: 'The state road commission of West Virginia is a direct governmental agency of the state, and as such is not subject to an action for tort.' [Syl., *Mahone v. State Road Commission et al.*, 99 W. Va. 397, 129 S.E. 320 (1925)].
>
> *The difficulty encountered when the State is involved* with regard to private property under the provisions of Article III, Section 9 of the Constitution *is not present where* a private corporation or *municipal corporation having the right of eminent domain is involved* or an independent contractor doing work for the State in a tortious manner is involved *because the provisions in the Constitution are self-executing in such cases where the parties have the right of eminent domain and in these instances common law or equitable actions will lie*. *Johnson v. City of Parkersburg*, 16 W. Va. 402 [(1880)]; *Mason v. Harper's Ferry Bridge Co.*, 17 W. Va. 396 [(1880)]; *Ward v. Ohio River R'd Co.*, 35 W. Va. 481, 14 S.E. 142 [(1891)]; *Teter v. [W. Va.] Cent. & P. R'd Co.*, 35 W. Va. 433, 14 S.E. 146 [(1891)]; *Thorne v. City of Clarksburg*, 88 W. Va. 251, 106 S.E. 644 [(1921)]; *Whitney v. Ralph Myers Contracting Corp.*, 146 W. Va. 130, 118 S.E.2d 622 [(1961)]; *Perdue v. S. J. Groves and Sons Company*, 152 W. Va. 222, 161 S.E.2d 250 [(1968)].

*Id.*, 153 W. Va. at 140-41, 168 S.E.2d at 291-92 (emphasis added).

After this Court's decisions in *Doss* and *Firestone*, the Legislature adopted The Governmental Tort Claims and Insurance Reform Act in 1986. *See* W. Va. Code § 29-12A-1-18 ("Tort Claims Act"). The purpose of the Tort Claims Act is to "limit the liability of political subdivisions and provide immunity to political subdivisions in certain instances. . . ." W. Va. Code § 29-12A-1. However, during oral argument, counsel for Respondent represented to this Court that "there is not a blanket immunity against the City of Morgantown," apparently referencing the statutory immunities contained in the Tort Claims Act. Because Respondent's counsel plainly stated there was no blanket immunity for Respondent, Respondent did not raise statutory immunity in its amended summary judgment motion before the circuit court, and the circuit court did not

address statutory immunity in its order, the Tort Claims Act is not a bar to Petitioner's ability to receive just compensation through a tort action in this case.

Petitioner further maintains that the remedy available to it through a tort action is inferior to those available through an eminent domain proceeding. However, the holding in *Doss* makes clear that remedies available to a property owner in a tort action against a municipality are, in fact, the same as those available from the State in a condemnation proceeding. In *Doss*, a case brought under the tort action of trespass on the case, this Court expressly held:

> We are, therefore, confronted at the outset with the question of whether the same elements should control in arriving at damage to real estate subjected to public use in actions of tort as in condemnation. We are of the opinion that the same rule should apply. We are of that opinion because if Chapter 28 of the Acts of 1933[4] were not applied to actions for the recovery of damages, it would mean that legal proceedings for exactly the same purpose, although brought under a different type of procedure, would be governed by substantially different rules leading to materially different results. If the State for public use damages property without taking, although it cannot be sued, mandamus may require it to institute a condemnation proceeding in which the property owner may establish and recover his damages. However, if a municipality damages private property it may be sued: We cannot say that it was the purpose of the Legislature to discriminate between municipalities and the State of West Virginia in identical instances where either may be haled into court and damages recovered, fixing their measure of damages on materially different bases. To do so would be a departure from the principle of uniformity.

*Id.* 133 W. Va. at 352-53, 56 S.E.2d at 98 (internal citations omitted). Although Petitioner may not compel Respondent to initiate eminent domain proceedings in order for it to obtain any just compensation to which it is entitled, our holding in *Doss* assures it the remedy in a tort action is *the same as the remedy in an eminent domain proceeding.* Indeed, in granting summary judgment in Respondent's favor, the circuit court expressly granted Petitioner thirty days in which to amend its complaint to assert tort claims. Accordingly, Petitioner did not meet its burden to demonstrate a lack of another adequate remedy and entitlement to the requested writ.

---

[4] We note that Chapter 28 of the Acts of 1933 is still enshrined in West Virginia Code § 54-2-9, which provides for commissioners to establish the amount of just compensation due a landowner. *Doss* held that the remedy available in a tort action against a municipality is the same as the remedy available in eminent domain, which, also includes the right to a commissioners' hearing.

7

B. A Jury of Twelve Freeholders

Article III, Section 9 of West Virginia's Constitution mandates that juries considering just compensation consist of twelve freeholders, if demanded by either party. Petitioner argues that any dispute in a tort action with Respondent would be resolved by a jury of six persons, depriving it of the constitutionally mandated jury. We begin our analysis by noting that our Rules of Civil Procedure contain a mechanism whereby a circuit court may increase the number of jurors seated in a matter. *See* W. Va. R. C. P. 47 (b) ("Unless the court directs that a jury shall consist of a greater number, a jury shall consist of six persons").

Additionally, to ensure that the constitutional requirement of twelve freeholders is followed, this Court has required a jury of twelve freeholders in cases where damage to real property by a municipality was at issue in a tort action. In *Thorne v. City of Clarksburg*, 88 W. Va. 251, 106 S.E. 644 (1921), the plaintiff brought an "action on the case" against the City of Clarksburg, alleging that the City had lowered "the grade of the street in front of her property." *Id.*, 88 W. Va. at 252, 106 S.E. at 645. Although the plaintiff demanded a jury of twelve freeholders to resolve the dispute and maintained that demand through trial, the lower court denied the request that the jury be comprised of freeholders and submitted the case to a jury, whose composition of freeholders was unknown. In reversing the circuit court in *Thorne*, we crafted two syllabus points that are germane to this action:

> The last clause of section 9 of article III of the Constitution of this state relating to the taking or damaging of private property for public use, providing that when required by either of the parties the compensation therefor shall be ascertained by an impartial jury of twelve freeholders, properly construed, is so far self–executing as to entitle them in a suit at common law for compensation for property not taken but damaged, to have the damages assessed by such impartial jury of twelve freeholders.

> Where in a suit for compensation for private property taken or damaged for public use either of the parties thereto has plainly demanded and been denied the right to an impartial jury of twelve freeholders, it will be presumed that the jury was not so composed and that the party so demanding was deprived of a constitutional right.

Syl. Pts. 1 & 3, *Thorne*.

Applying the holding in *Thorne* to the instant case, we find that Petitioner is entitled to a jury of twelve freeholders to determine just compensation in a tort action against Respondent. However, such right does not translate to a right to recovery through eminent domain proceedings. As we stated above, the Constitution protects a landowner's right to "just compensation" through principles of general law. This does not afford a landowner the right to compel an eminent domain proceeding in order to establish just compensation where the landowner's ability to seek such just

8

compensation through a tort claim for damages provides an adequate remedy, where immunities are not implicated.

C.      Availability of Attorney's Fees

Finally, Petitioner argues that by denying its petition for writ of mandamus the circuit court deprived Petitioner an adequate remedy because it is foreclosed from recovering attorneys' fees in a general tort claim while such fees would be available if Respondent is compelled to institute an eminent domain proceeding. This argument conflates a remedy in a cause of action with what is essentially a penalty that is assessed because of the dilatory conduct of a party. We have held that, "[c]osts and attorney's fees may be awarded in mandamus proceedings involving public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties." Syl. Pt. 1, *State ex rel. W. Va. Highlands Conservancy, Inc. v. W. Va. Div. of Env't Prot.*, 193 W. Va. 650, 458 S.E.2d 88 (1995). However, such awards are not automatic; they require a party to prevail in the mandamus action before an award of attorney's fees is proper:

> Attorney's fees may be awarded to a prevailing petitioner in a mandamus action in two general contexts: (1) where a public official has deliberately and knowingly refused to exercise a clear legal duty, and (2) where a public official has failed to exercise a clear legal duty, although the failure was not the result of a decision to knowingly disregard a legal command.

Syl. Pt. 2, *Id.*

The potential award of attorney's fees is not a "remedy" for the purpose of determining if a writ should issue. Otherwise, every requested writ would arguably have to be granted because of the general unavailability of attorney's fees in a tort action. In a mandamus action, the award of attorney's fees serves as a penalty against a governmental entity for failing to do what it is *legally required* to do. We have held that attorney's fees may be awarded in cases where a governmental entity has disregarded a non-discretionary duty and a citizen has been forced to bring a mandamus action to compel the government to do its job. *See id.*, 193 W. Va. at 653-54, 458 S.E.2d 91-2. Here, we found that Petitioner had another adequate remedy, thereby precluding a finding that Respondent had a non-discretionary duty to institute an eminent domain proceeding. Therefore, simply requiring that Petitioner seek any just compensation to which it believes it is due through a tort action rather than compelling Respondent to initiate an eminent domain proceeding, even where Petitioner may not be able to recover attorney's fees, does not deprive Petitioner of an adequate remedy under the law.

Accordingly, Petitioner did not meet its burden to establish it is entitled to a writ of mandamus compelling Respondent to institute eminent domain proceedings.

## IV.  CONCLUSION

For the reasons set forth herein, because Petitioner failed to meet its burden to establish all three *Kucera* factors, the circuit court's order granting summary judgment to Respondent is affirmed.

Affirmed.

**ISSUED**: June 11, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING:**

Justice Elizabeth D. Walker
Justice John A. Hutchison

Walker, J., dissenting, joined by Hutchison, J.:

In this case, Roman Realty petitioned to compel the City of Morgantown to institute condemnation proceedings.  The circuit court denied the petition for a writ of mandamus on the grounds that Roman Realty had another adequate remedy at law—a civil action against the City.  The majority affirms that decision.

The majority's decision gives a seal of approval to a slipshod "sue me if you don't like it" approach that offends the careful balance the Legislature has struck between the right of a municipality to take the property of private citizens and the fundamental rights of property owners.  The Legislature prescribed the process for an appropriate exercise of the power of eminent domain in article 2, chapter 54 of the West Virginia Code,[1] and this Court crafted inverse condemnation to

---

[1] Article III, Section 9 of the West Virginia Constitution specifies that "[p]rivate property shall not be taken or damaged for public use, without just compensation."  In order to balance the "societal interest in efficiently securing public infrastructure" with the "constitutional preeminence afforded private property rights through the mandate of just compensation," the Legislature codified a comprehensive statutory framework within chapter 54 of the West Virginia Code to ascertain just compensation.  *See State ex rel. W. Virginia Dep't of Transportation, Div. of Highways v. Burnside*, 237 W. Va. 655, 659, 790 S.E.2d 265, 269 (2016).

enable property owners to access the protections afforded by that process when government entities fail to properly abide by its framework.[2]

In light of the Governmental Tort Claims Act and other practical considerations that may preclude relief in tort, I take issue with refusing Roman Realty relief in mandamus and inverse condemnation, particularly when the coffers of the municipality are, or should be, open for the taking when it refuses to don its eminent domain hat. Because I am concerned that the majority may be read to foreclose aggrieved landowners from pursuing inverse condemnation against municipalities in favor of tort actions, which as explained below are an inadequate alternative mechanism for accessing relief, I respectfully dissent.

The majority's determination that Roman Realty had another adequate remedy at law hinges on *Doss v. City of Mullens*,[3] a 1949 case, and on the supposed availability of remedies against municipalities *other* than inverse condemnation and the procedures in article 2, chapter 54. The majority then reasons that civil suit is an adequate remedy at law because the same remedies and rules are available in tort as in condemnation actions. Yes, *Doss v. City of Mullens* may be read to apply the same rules and damages then available in a Chapter 54 proceeding[4] to civil suits against municipalities, and so to provide the procedural protections available in mandamus to tort actions.[5] But I question *Doss*'s salience in view of the enactment of the Governmental Tort Claims and Insurance Reform Act in 1986.[6]

The Tort Claims Act provides statutory immunity to political subdivisions. Under the Act, a political subdivision is generally not liable in damages *in a civil action* "for injury, death, or loss to persons or property allegedly caused by any

---

[2] *See W. Va. Dep't of Trans., Div. of Highways v. Pifer*, 242 W. Va. 431, 443, 836 S.E.2d 398, 410 (2019) ("Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of his or her property without the benefit of condemnation proceedings."); Syl. Pt. 3, *W. Va. Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 807 S.E.2d 760 (2017) ("Pursuant to Rule 71B of the West Virginia Rules of Civil Procedure, the proper procedure for pursuing inverse condemnation is to file a complaint in circuit court seeking a writ of mandamus to compel the state to institute condemnation proceedings.").

[3] *Doss v. City of Mullens*, 133 W. Va. 351, 56 S.E.2d 97 (1949).

[4] *See* W. Va. Code § 54-2-9 (1933).

[5] *Doss*, 133 W. Va. at 353, 56 S.E.2d at 98.

[6] The majority states that it will not venture into immunities law because the City of Morgantown did not raise an immunity defense. But the majority sets up a straw man simply to knock it down because the City *has* no immunity defense to a *mandamus* action. *See* W. Va. Code § 29-12A-4(b)(1) (Tort Claims Act does "not restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies").

act or omission of the political subdivision."[1]  The Act carves out five specific situations where political subdivisions are liable for "injury, death, or loss to persons or property": negligent operation of a vehicle, negligent performance of acts performed by employees acting within the scope of employment, negligent failure to keep public roads in good repair, negligence of employees in some governmental buildings, and situations where liability is expressly imposed by a provision of this code.[2]

*Doss* predates the Tort Claims Act by forty years.  By declining to address the Act's effect on *Doss*, the majority assumes that the causes of action against a municipality that were available in 1949 are available today—an assumption of epic proportions considering that, under the Tort Claims Act, a political subdivision is generally not liable in damages *in a civil action* "for injury, death, or loss to for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision."[3]

Setting the Tort Claims Act to the side, the majority leaves yet more questions on the table. The majority does not explore *how* Roman Realty might achieve the ends provided by condemnation proceedings, and instead assumes that because tort actions exist, generally, relief may be had.  What does the cause of action in tort look like?  Who bears the burden of proof?  Is it shifted to the landowner?  Must one meet the elements of the tort alleged, or must it simply show that the City has damaged its property or damaged it to the point that it constitutes a taking?  Does title transfer to the City as though through eminent domain?  Those questions, critical to the conclusion that another adequate remedy exists in tort, are unexplored by the majority decision.

The majority fails to identify or address the viability of prospective causes of action available to Roman Realty if it is precluded from pursuing inverse condemnation proceedings. Problematically, in so doing, determination of whether an adequate remedy exists—the vital consideration for issuing mandamus relief in this case—is deferred, and the mechanisms of that remedy are avoided.  It is plain that an action under trespass is inoperable as a possible cause of action for Roman Realty, because eminent domain as a doctrine generally rests on the premise that the governing body has a *right* to the private property for the public good.[4]  One cannot trespass, as a matter of law, if one has the right to be there.  If the majority is read to permit the landowner to proceed in tort against the City as an adequate alternative to proceeding through inverse condemnation, it must force the City to abdicate its eminent-domain-derived authority to be on the property.

Presumably, the majority intends that landowners could pursue tort under trespass theories, apparently with the same protections available in condemnation proceedings.  But it is clearly

---

[1] W. Va. Code § 29-12A-4(b)(1).

[2] W. Va. Code § 29-12A-4 (c)(1)-(5).

[3] W. Va. Code § 29-12A-4(b)(1).

[4] *See* W. Va. Code § 54-2-1.

inconsistent to apply the eminent domain statutory process premised on the City's lawful presence in the context of a tort action that, definitionally requires proof that the City does *not* have a right

to be on the property as a matter of law. The City is either on a landowner's property for public use under color of law, or it is a trespasser – it cannot be both; the City cannot defend itself with the right of eminent domain in tort whilst declining to observe the statutory process outlined to avoid abuse of that power.

And as for potential causes of action rooted in the third-party contractor's negligence, none of these claims can be imputed to the City under the Tort Claims Act, which exposes municipalities to liability *only* for the negligent acts of its employees and specifically *precludes* liability for independent contractors.[1] When read in conjunction with the eminent domain statutes, the Act permits a municipality to lawfully access and take land for its own use under its power of eminent domain and then hide behind third-party contractors to avoid paying just compensation. Those actions against third-party contractors, while perhaps viable, are not subject to the eminent domain protections because they are not claims against a governing body with the authority to invoke eminent domain under Chapter 54. In short, the majority has directed landowners harmed by the City's power of eminent domain to pursue a civil action in tort, but I cannot identify a single cause of action under the majority's framework that practically empowers Roman Realty to access the protections available in Chapter 54 of our code without simultaneously failing to comply with the code's mandate that the governing body have a right to take or damage the property in the first instance or falling into the immunity pitfalls inherently brought forth under the Tort Claims Act.

Unlike the majority, I see little sense in complicating what is an otherwise streamlined process. Had the City appropriately exercised its right to eminent domain, the path to just compensation would be a clear one. But because the City acted first and asked permission later, the landowner's path is a different, more treacherous one through tort. The pitfalls of forcing the landowner down that path have not been adequately addressed by the parties or by the majority. So, I respectfully dissent insofar as this decision might be read to foreclose the use of inverse condemnation in every case against a municipality for availability of an alternative, adequate remedy in tort.

I am authorized to state that Justice Hutchison joins me in this dissent.

---

[1] *See* W. Va. Code § 29-12A-3(a) ("'Employee' does not include an independent contractor of a political subdivision.")